IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2016 Term

**FILED**
**November 17, 2016**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 16-0738

STATE OF WEST VIRGINIA ex rel. PRESSLEY RIDGE; ELKINS MOUNTAIN
SCHOOL; ACADEMY MANAGEMENT, LLC;
STEPPING STONES, INC.; STEPPING STONE, INC.;
FAMILY CONNECTIONS, INC.; and BOARD OF CHILD CARE OF THE
UNITED METHODIST CHURCH, INC.,
Petitioners

v.

WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES;
KAREN L. BOWLING, Cabinet Secretary of the
West Virginia Department of Health and Human Resources;
WEST VIRGINIA BUREAU FOR MEDICAL SERVICES;
CYNTHIA BEANE, Acting Commissioner for the
West Virginia Bureau for Medical Services;
WEST VIRGINIA BUREAU FOR CHILDREN AND FAMILIES; and
NANCY  EXLINE, Commissioner for the
West Virginia Bureau for Children and Families,
Respondents

Writ of Mandamus
Writ Granted as Moulded

Submitted: October 25, 2016
Filed: November 17, 2016

Charles Johnson, Esq.
Jared M. Tully
Andrew G. Jenkins, Esq.
Kara S. Eaton

Patrick Morrisey, Esq.
Attorney General
Charleston, West Virginia
Elbert Lin, Esq.

Frost Brown Todd, LLC
Charleston, West Virginia
Counsel for Petitioners,
Pressley Ridge, Elkins Mountain School,
and Board of Child Care of the United
Methodist Church, Inc.

Jeffrey Wakefield, Esq.
Peter T. DeMasters, Esq.
Kyle T. Turnbull, Esq.
Flaherty Sensabaugh Bonasso, PLLC
Charleston, West Virginia
Counsel for Petitioners,
Academy Management, LLC,
Stepping Stones, Inc.,
Stepping Stone, Inc., and
Family Connections, Inc.

Jennifer N. Taylor, Esq.
Charleston, West Virginia
Counsel for Amicus Curiae Davis-Stuart, Inc.;
Burlington United Methodist Family Services;
and Cammack Children's Center

David J. Sisson, Esq.
Reinhart Boerner Van Deuren, S.C.
Milwaukee, Wisconsin
Counsel for Amicus Curiae The Association
of Children's Residential Centers

Scott H. Kaminski, Esq.
Kaminski Law, PLLC
Charleston, West Virginia
Counsel for Amicus Curiae The Association
of Children's Residential Centers

G. Nicholas Casey, Jr., Esq.
Webster J. Arceneaux, III, Esq.
Valerie H. Raupp, Esq.
Lewis, Glasser, Casey & Rollins, PLLC
Charleston, West Virginia
Counsel for Amicus Curiae St. John's
Home for Children

Solicitor General
Christopher S. Doddrill, Esq.
Deputy Attorney General
Steven R. Compton, Esq.
Deputy Attorney General
Charleston, West Virginia
Counsel for Respondents

JUSTICE WORKMAN delivered the Opinion of the Court.

JUSTICE BENJAMIN AND JUSTICE LOUGHRY dissent and reserve the right to file dissenting opinions.

SYLLABUS BY THE COURT

1.  "A writ of mandamus will not issue unless three elements coexist - (1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy."  Syl. Pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969).

2.  "To entitle one to a writ of mandamus, the party seeking the writ must show a clear legal right thereto and a corresponding duty on the respondent to perform the act demanded."  Syl. Pt. 1, *Dadisman v. Moore*, 181 W.Va. 779, 384 S.E.2d 816 (1989).

Workman, Justice:

This case is before the Court upon a petition for a writ of mandamus filed by the Petitioners,[1] seven entities currently under contract to provide residential services to youth in the State of West Virginia. They seek to require the Respondents, West Virginia Department of Health and Human Resources (hereinafter "DHHR"), its Cabinet Secretary, the West Virginia Bureau for Medical Services (hereinafter "BMS"), its Acting Commissioner, the Bureau for Children and Families (hereinafter "BCF"), and its Commissioner, (hereinafter jointly referred to separately or jointly as "Respondents") to promulgate new or amended legislative rules prior to implementing changes to existing residential child care services policies.

The Petitioners sought injunctive relief in the Circuit Court of Kanawha County on July 28, 2016, which relief was denied by the circuit court. The Petitioners chose not to appeal that ruling and filed the writ of mandamus currently being considered by this Court.

---

[1]The Petitioners include Pressley Ridge; Elkins Mountain School; Academy Management, LLC; Stepping Stones, Inc.; Stepping Stone Inc.; Family Connections, Inc.; and Board of Child Care of the United Methodist Church, Inc.

2

I. Factual and Procedural History

The Petitioners, as youth service providers,[2] maintained contracts under which they were reimbursed by the State at a "bundled" rate whereby they were permitted to combine their rates for room, board, supervision, and medical treatment. The behavioral health services provided to a child were charged at a single daily rate, regardless of the nature or the quantity of service provided to the child. The standards explaining various levels of care were contained in a manual developed by the DHHR.

The Respondents sought to implement new service provider and reimbursement methods, to be included in new contracts with the providers. In furtherance of the changes sought to be made, the Respondents conducted a series of meetings and training sessions for providers from approximately September 2015 to July 2016, attempting to explain and plan the new methods. Despite these attempts to articulate and discuss the proposed changes, the Petitioners claim that a significant degree of uncertainty and confusion existed regarding the new polices, their compliance with legal standards, and the ability of all stakeholders to have an opportunity to provide input prior to implementation of new policies.

---

[2]The Petitioners provide services to children who have been professionally evaluated and suffer from behavioral, functional, diagnostic, or social conditions requiring placement in residential settings outside their homes.

According to the documents filed with this Court and the arguments of counsel, the redesigned policies would alter the method for provider reimbursement, utilizing an "unbundled" rate, whereby the providers would be required to bill for medical treatment separately from room, board, and supervision. Under the new plan, the BCF would reimburse for room, board, and supervision, based upon new daily rates for either "standard" or "enhanced" services. The BMS would reimburse for medical services, based upon the actual behavioral services provided rather than a single daily rate, with approximately seventy-five percent of that reimbursement money coming from the federal government through Medicaid.

The new policies also entail alterations to the provision of services to the children and the methodology for placing and discharging children in various provider facilities, including the Petitioners' facilities. On June 30, 2016, the Respondents sent the providers a final draft of the new provider agreement. Fourteen of the twenty-four providers signed those new agreements. On July 21, 2016, the Petitioners filed a "Petition for Injunctive Relief and Motion for Temporary Restraining Order and/or Preliminary Injunctive Relief" in the Kanawha County Circuit Court. The Petitioners argued that the alterations should not be permitted until the Respondents promulgate new standards, through the

legislative rule making process, to implement these changes.[3]  On July 28, 2016, the circuit court held a hearing, originally designated exclusively for purposes of legal argument. Despite that initial limitation, the circuit court sought factual evidence from one witness for the Respondents but did not permit evidence to be introduced by the Petitioners.

By order dated July 28, 2016, the circuit court denied the Petitioners' request for a preliminary injunction.[4]  The circuit court found that it lacked jurisdiction because the Petitioners failed to provide pre-suit notice to the State, as required by West Virginia Code § 55-17-3 (2016).[5]  The circuit court further held that intervention by the court would violate principles of separation of powers because only the executive branch has the power to contract with the providers.  Furthermore, the circuit court found no wrongdoing by the State and no legal standards compelling relief.  The court observed that the DHHR manual constitutes the DHHR policy, and it will be updated to comply with the proposed changes. Thus, no legislative rule making was deemed necessary.  Furthermore, as the Petitioners

---

[3]On July 26, 2016, BMS filed a notice and public comment period to amend the Rehabilitation Manual to unbundle the reimbursement policy.

[4]The circuit court initially stated from the bench that it would grant the injunction for thirty days, but then reversed course and denied the preliminary injunction.

[5]The circuit court determined that it did not have jurisdiction because the required thirty-day pre-suit notice was not filed until July 22, 2016.  *See Motto v. CSX Transp., Inc.*, 220 W. Va. 412, 420, 647 S.E.2d 848, 856 (2007).

agree, the Medicaid reimbursement plans are exempt from legislative rule-making. *See* W.Va. Code § 29A-1-3(c) (2015).

The circuit court also found that the Petitioners are not required to contract with the State, reasoning that "[i]f Petitioners do not wish to agree to the Department's contractual terms, then Petitioners are free to exercise their rights. But the State is not required to bow to Petitioners' unilateral terms." Ultimately, the court held that it discerned no basis upon which to conclude that children will be negatively impacted, displaced, or denied services through the imposition of the new polices. The order provides: "Clearly, what Petitioners really want is to keep the Department in the current contracts and prevent the Department from changing its reimbursement system in an effort to avoid accountability for services provided."[6]

The Juvenile Justice Commission, whose mission is, in part, to examine systemic issues impacting the residential placement of children,[7] conducted a public forum

---

[6]The circuit court's order denying the requested injunction alluded to the fact that the prior "bundled" rates did not hold providers accountable for amounts they billed for services.

[7]The Juvenile Justice Commission's 2015 Annual Report includes a Mission Statement. It acknowledges the necessity for examination of facilities and programs "not only to ensure that the sentencing judges are very familiar with the environment into which the are sentencing adjudicated juveniles, but also in order to ensure that these programs are appropriate and as effective as they can possibly be." Further, the Statement addresses the need for "collaboration and communication between the Court, the Legislature, and the Executive agencies" to ensure that "West Virginia's investment of energy and resources into

6

on July 27, 2016; the Respondents were invited to participate but declined to do so. In a July 29, 2016, statement, the Commission opined: "We were surprised, since the court system is responsible for placing the children in residential care, that the entire system would be replaced in secrecy, eliminating judicial discretion and jeopardizing the welfare and the safety of children." Based upon discussions during the public forum, the Commission issued findings indicating that the DHHR had designed the new policies unilaterally, without consulting the Juvenile Justice Commission, the Commission to Study the Residential Placement of Children, or the Governor's Oversight Committee on Juvenile Justice Reform. The Juvenile Justice Commission further found that the proposed changes "could potentially violate West Virginia law" to the extent that the polices could interfere with the statutory multidisciplinary process or the discretion of courts to place children in residential care, as more fully developed below. *See* W.Va. Code § 49-4-403(b)(1) (2015) (explaining standards for convening multidisciplinary teams).

Rather than appealing the circuit court's denial of injunctive relief, the Petitioners filed the August 4, 2016, writ of mandamus currently under consideration by this Court. They seek to compel the Respondents to implement new legislative rules before implementing the proposed changes to existing residential childcare service programs and reimbursement procedures. The Petitioners contend that the BCF must lawfully promulgate

children who are in trouble will result in the best possible future for the State."

7

legislative rules or replace current rules before implementing the widespread changes to the system. By order entered August 8, 2016, this Court stayed the implementation of the changes.[8]

## II. Standard of Review

As expressed in syllabus point two of *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969), and consistently utilized as a standard for deciding issues regarding requests for writs of mandamus in this Court, "[a] writ of mandamus will not issue unless three elements coexist - (1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." This Court, in syllabus point one of *Dadisman v. Moore*, 181 W.Va. 779, 384 S.E.2d 816 (1989), similarly explained: "To entitle one to a writ of mandamus, the party seeking the writ must show a clear legal right thereto and a corresponding duty on the respondent to perform the act demanded." "Since mandamus is an 'extraordinary' remedy, it should be invoked sparingly." *State ex rel. Billings v. City of Point Pleasant*, 194 W.Va. 301, 303, 460 S.E.2d 436, 438 (1995). With these standards in mind, this Court addresses the issues raised in this matter.

---

[8]The Respondents emphasize that the case in Kanawha County Circuit Court "remains active and has not been finally dismissed or resolved." Furthermore, the Petitioners could have brought a mandamus action in circuit court.

## III. Discussion

The Petitioners present this Court with a unique procedural challenge. They contend the widespread changes contemplated by the Respondents will conflict with existing legal standards, impair the discretion of multidisciplinary teams to determine necessary residential treatment for youth, and interfere with the ability of courts to determine appropriate placement for children. Yet these assertions lack support from sufficient competent evidence in the record. No real evidentiary record exists, and some of the allegedly conflicting policies have not yet been reduced to writing. A proposed computer matrix system, for example, has not yet been detailed in written materials. The Petitioners contend that the matrix would involve a computer-generated mechanism for the determination of placement of children and potentially interfere with judicial and multi-disciplinary team discretion in placement of children.

Further, the Petitioners contend that the Respondents must comply with statutory requirements for the provision of services to youth in residential facilities, as well as the regulations provided for such care in West Virginia Code of State Rules §§ 78- 3-1 to -3-24. The Petitioners assert that the new provider agreements will conflict with existing statutory and regulatory standards, with particular relevance to revised "standard" levels of services for room, board and supervision; "enhanced" levels of services for room, board and supervision; new daily rates; judicial decisions regarding placement into residential facilities;

9

limitations on continued stays; standards referred to as the "no ejectment rule," which would allegedly reduce the discretion of the Petitioners to discharge children who can not be adequately treated; and the discretion of courts and multidisciplinary teams regarding placement of children.[9]

Although this Court has been presented with a myriad of assertions and speculation regarding the interplay between various new policies and existing statutory and regulatory law, we lack a factual record upon which to base a reasoned decision regarding actual conflicts and the necessity for new or amended legislative rules. As this Court declared in *E. H. v. Matin*, 168 W. Va. 248, 284 S.E.2d 232 (1981), "it is important for courts to recognize that we are not experts in medicine, mental health, or institutional management." *Id*. at 258, 284 S.E.2d at 237. In *Matin*, a group of mental facility patients originally filed a mandamus action in this Court. We recognized the limitations of this Court in dealing with matters of policies involving the provision of health services, noting that "among the best

---

[9]For instance, Rule 36 of the West Virginia Rules of Juvenile Procedure provides:

> Pursuant to W.Va. Code § 49-4-403, the multidisciplinary team shall develop an individualized service plan for the juvenile based upon the assessment report provided pursuant to Rule 35, and based upon the team's independent investigation of the juvenile's circumstances and rehabilitative needs. The multidisciplinary treatment team shall provide its proposed individualized service plan to the court and counsel at least 72 hours prior to the juvenile's dispositional hearing.

trained professionals in the field of mental health there is an enormous divergence of opinion

concerning appropriate management of related institutions and appropriate techniques of

therapy for different categories of patients." *Id.*[10]

> In *Matin*, we very astutely observed:
>
>> This Court is not a suitable forum for the development of an appropriate plan for the entire reorganization of the mental health care delivery system in West Virginia. As a multi-member appellate court we are not equipped to hold hearings and take testimony; nor does the press of business in this, the State's only appellate Court, permit our giving this case the type of protracted and undivided attention which it requires.

*Id.* at 259, 284 S.E.2d at 237. This Court clearly did "not have sufficient information to enter

an appropriate order enumerating the necessary changes" to the provision of mental health

services. *Id*. at 258, 284 S.E.2d at 237. Significantly, we recognized that the petitioners in

*Matin* had a right to have their valid concerns addressed through the process of evidentiary

hearings in an appropriate forum.[11] Thus, "under our inherent powers," we transferred the

---

[10]Unlike the circumstances of the present case, the mandamus presented in *Matin* did include some semblance of a record. That case "was submitted to this Court upon a record developed through depositions of the staff of Huntington State Hospital and depositions from expert witnesses who evaluated the clinical and custodial program at the hospital." 168 W.Va. at 251, 284 S.E.2d at 234.

[11]"When the Legislature enacts a law giving a group of individuals a clear and explicit right, there is also created an implicit corresponding duty on the part of the State to grant or enforce that right. This observation is supported by both precedent and logic." 168 W. Va. at 257, 284 S.E.2d at 237. "[W]e find that this duty is enforceable in an action in mandamus. To hold otherwise would be to imply that the Legislature passed this statute merely to serve as a hortatory expression of its wishes. We are loath to draw such a conclusion." *Id*. at 258,

matter to "the Circuit Court of Kanawha County for further proceedings to develop an appropriate remedy consistent with the guidelines set forth" by this Court. *Id*. at 259, 284 S.E.2d at 237-38.

In the absence of a more complete record in the case sub judice, this Court is unable to discern whether extraordinary relief is justified, i.e., whether the Petitioners have a clear legal right to the relief sought and whether the Respondents have a legal duty to promulgate legislative rules prior to implementing the new policies. In many situations, this Court would consequently deny the requested writ. We are hesitant to do so in this case only because of the fundamental importance of the vital rights of the children of this State and the deleterious effects that the Petitioners allege these policy changes may have.

Therefore, this Court finds it most appropriate to order this matter to be docketed in the Circuit Court of Kanawha County as if it were an original proceeding in mandamus in that court. The Petitioners and the Respondents are ordered to submit separate documents, within thirty days of the entry of this Court's order, to the Circuit Court of Kanawha County, detailing each altered policy, specifying the precise manner in which each new policy complies or conflicts with established statutory and regulatory requirements for the provision of child services, articulating the effect of each new policy upon the discretion

---

284 S.E.2d at 237.

12

of circuit court judges, and explaining why such policy should or should not be the subject of legislative rule making prior to implementation.

Thereafter, in a time frame to be determined by the lower court for the expeditious management of this case, hearings before the Circuit Court of Kanawha County should be conducted. In addition to issues presented by the parties or raised sua sponte by the trial court, a primary object of these hearings should be the development and evaluation of factual issues surrounding the Respondents' compliance with statutory requirements for the provision of services to youth in residential facilities, as well as the regulations provided in West Virginia CSR §§ 78- 3-1 to -3-24.

We agree as a general principle that the executive branch has authority to enter into contracts with providers, the terms of which should not be dictated by the courts. However, this Court is profoundly concerned with the potential intrusion into the discretion of circuit court judges in fashioning appropriate placement plans for children which may be precipitated by the adoption of new policies. We remind the Respondents that a long history of case law, as well as West Virginia Code §§ 49-1-1 to -7-304 (2015), establish the framework for significant involvement and discretion by the circuit courts of this State in the determination of appropriate placement for children. The placement of children is accomplished by order of the courts, and, as this Court held in syllabus point three of *State*

13

*ex rel. Ohl v. Egnor*, 201 W.Va. 777, 779, 500 S.E.2d 890, 892 (1997), "West Virginia Code § 49-5-13(b) (Supp. 1996) expressly grants authority to the circuit courts to make facility-specific decisions concerning juvenile placements." 201 W.Va. at 779, 500 S.E.2d at 892.[12] Further, in *State ex rel. West Virginia Department of Health and Human Resources v. Frazier*, 198 W.Va. 678, 482 S.E.2d 663 (1996), this Court explained: "When unfortunate circumstances require that a juvenile be removed from his or her home, it is the circuit courts that determine where the juvenile shall be placed." *Id*. at 784, 500 S.E.2d at 897. This Court has explained that "we remain mindful that . . . whenever a child appears in court, he is a ward of that court. W.Va. Code § 49-5-4 (1996); *Mary D. v. Watt*, 190 W.Va. 341, 438 S.E.2d 521 (1992). Courts are thus statutorily reposed with a strong obligation to oversee and protect each child who comes before them." *In re B.H.*, 233 W. Va. 57, 65, 754 S.E.2d 743, 751 (2014) (internal citations omitted).

This Court has been unwavering in its attempts to attain resolutions that most thoroughly serve the best interests of the child. In *In re Timber M.*, 231 W. Va. 44, 60, 743 S.E.2d 352, 368 (2013), for example, this Court explained:

> Based on our prior precedent and firmly rooted in this Court's concern for the well-being of children, we now hold that in cases involving the abuse and neglect of children, when it appears from this Court's review of the record on appeal that the

---

[12]*See* W.Va. Code § 49-4-714 for the current version of the provisions regarding discretion of courts in instances of juvenile delinquent placement.

health and welfare of a child may be at risk as a result of the child's custodial placement, regardless of whether that placement is an issue raised in the appeal, this Court will take such action as it deems appropriate and necessary to protect that child.

*Id*. at 60, 743 S.E.2d at 368; *see also In Interest of Carlita B*., 185 W. Va. 613, 625, 408 S.E.2d 365, 377 (1991) ("The formulation of the improvement period and family case plans should therefore be a consolidated, multidisciplinary effort among the court system, the parents, attorneys, social service agencies, and any other helping personnel involved in assisting the family.") (footnote omitted).

In the present case, this Court envisions exacting scrutiny in lower court hearings, permitting the development of an evidentiary record and a determination of whether the new standards conflict with existing law and/or require new or amended legislative rules.[13] We encourage the parties to include the Juvenile Justice Commission and the Commission to Study Residential Placement of Children in the evaluation of these issues, in an effort to minimize disruption of services and emphasize the welfare and safety of children.

---

[13]Further, while making no decision in the instant case due to the lack of an adequate record, this Court is mindful of our prior admonition that not all new procedures have to be implemented through legislative rule making. In *West Virginia Racing Commission v. Reynolds*, 236 W.Va. 398, 780 S.E.2d 664 (2015), this Court discussed the authority of a state agency to define certain terms without requiring a new legislative rule. *Id*. at 401, 780 S.E.2d at 667; *but see Coordinating Council for Independent Living, Inc. v. Palmer*, 209 W.Va. 274, 546 S.E.2d 454 (2001) (requiring legislative rule making where Tax Commissioner's actions affected private rights and involved application of the law.).

Accordingly, we encourage those entities to actively participate in the hearings to be conducted in the circuit court.

As this Court explained in *Matin*, cooperation between the parties would be extremely beneficial, and some areas of dispute may be resolved "in advance of any further proceedings in the lower court." 168 W.Va. at 258, 284 S.E.2d at 237. "Certainly, given the complexity of the problems presented by this case, the Court requests and requires of counsel for both sides the utmost good faith cooperation consistent with their obligations to their clients." *Id.* Any significant change to children's residential services is the concern of the judicial branch and will benefit from cooperation among all three branches of government. The children of this State benefit from such cooperative efforts, and this Court is exceedingly discouraged both by the apparent absence of collaboration and communication among the Petitioners and the Respondents in this matter and the DHHR's alleged refusal to work with the Juvenile Justice Commission in embarking upon dramatic policy changes that could vitiate the quality of care for children in residential care facilities.

## IV. Conclusion

Based upon the foregoing, the writ requested by the Petitioners is granted as moulded, and this case is transferred to the Circuit Court of Kanawha County for further proceedings consistent with this opinion and with directions to enter such orders as would

16

be appropriate had this case been brought in that court as an original mandamus.[14]  Because

Judge Kaufman originally addressed related issues in this matter, it is assigned to his court.

Writ granted as moulded.

---

[14]This Court is grateful for the amicus curiae briefs filed by St. John's Home for Children, Children's Residential Centers, Davis-Stuart, Inc., Burlington United Methodist Family Services, and Cammack Children's Center.  We appreciate their expressions of concern regarding the legal implications of the new provisions and the effects upon the provision of competent care to youth.