## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**March 25, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**State of West Virginia ex rel.**
**West Virginia Department of Human Services,**
**Petitioner,**

**v.)  No. 24-728**

**The Honorable David H. Wilmoth,**
**Judge of the Circuit Court of Randolph County,**
**Respondent.**

## MEMORANDUM DECISION

Shortly after the West Virginia Department of Human Services ("DHS") announced that it would close the West Virginia Children's Home ("Children's Home"), the Honorable David H. Wilmoth, Judge of the Circuit Court of Randolph County, entered an administrative order directing DHS to continue operating the Children's Home. In this case, DHS seeks a writ of prohibition to prevent the enforcement of Judge Wilmoth's administrative order.[1] By order entered December 26, 2024, this Court stayed Judge Wilmoth's administrative order and granted DHS's motion for expedited relief. The matter was submitted for consideration without oral argument. Acting without undue delay, we determine that a memorandum decision issuing the writ of prohibition is appropriate to resolve the issue in an expedited manner.

The Children's Home is a juvenile residential facility located in Randolph County, West Virginia, that is more than 100 years old. Currently, the aging facility is able to accommodate no more than seven male juveniles, and by the end of October 2024, it housed only two juveniles. According to DHS, the facility costs approximately $1.7 million annually to operate, and a study completed about one year ago identified $7.8 million in necessary maintenance and safety measures to bring the building up to code. Noting the facility's age and structural needs, DHS announced on November 19, 2024, that it would close the Children's Home effective December 31, 2024. In anticipation of this closure, DHS worked with Children's Home personnel to transition them to other employment, and nurses providing on-call services were given their contractually required thirty-day cancellation notice. DHS also planned for the two juveniles residing at the Children's Home to remain there until they completed their school semester, at which point they would be transferred to an appropriate alternative placement by December 31, 2024.

---

[1] DHS appears by Attorney General John B. McCuskey, Deputy Attorney General Director Steven R. Compton, and Assistant Attorney General Kristen E. Ross. Judge Wilmoth appears by Teresa J. Lyons.

On December 9, 2024, approximately three weeks after the announcement of the Children Home's closure, Judge Wilmoth unilaterally entered an "Administrative Order" directing the Children's Home to "remain open to receive placement of and provide housing, care, treatment, education, safety and other required and necessary services to the juveniles of this State."[2] Judge Wilmoth found that closing the Children's Home would "result in further risk and harm to juveniles," would deny them services to which they are entitled by statute, exacerbate difficulties placing juveniles, and amounts to an "abdication of" DHS's statutory requirement to provide juvenile housing and treatment. Judge Wilmoth ordered DHS to operate the Children's Home "until such time as there exists within this State adequate and appropriate housing and treatment to address and provide for the many and various needs of at-risk juveniles in this State as set forth by statute." Judge Wilmoth did not identify a source of legal authority permitting him to mandate the continued operation of the Children's Home. The administrative order states only that "West Virginia Code 49-2-101 et[] seq.[] outlines the obligations of the State of West Virginia regarding the issues raised by the current conditions in this state" and that the Children's Home "serves in the capacity of meeting some or all of these obligations." On December 11, 2024, DHS filed this petition for a writ of prohibition seeking to prohibit Judge Wilmoth from enforcing the administrative order.[3]

West Virginia Code § 53-1-1 provides that "[t]he writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." Where it is claimed that a court has exceeded its legitimate powers, we examine five factors:

> (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression.[4]

"These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue[,] . . . all five factors need not be satisfied, [and]

---

[2] Although only two juveniles remained in the Children's Home, the administrative order was entered in six separate juvenile matters: four juvenile status offender cases, one juvenile delinquency case, and one child abuse and neglect proceeding. The administrative order was later filed in a non-juvenile proceeding opened by the circuit court.

[3] DHS also moved Judge Wilmoth to vacate or, alternatively, to stay enforcement of the administrative order. Judge Wilmoth denied the requested relief.

[4] Syl. Pt. 4, in part, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

. . . the third factor, the existence of clear error as a matter of law, should be given substantial weight."[5]

In consideration of these factors—and the existence of clear error as a matter of law in particular—the writ sought by DHS here should issue. Put simply, Judge Wilmoth has identified no legal authority that would support this unusual use of an administrative order, and we find none. To begin, we note that the administrative order sounds in mandamus, as Judge Wilmoth directs DHS to keep the Children's Home open to meet its statutory obligations regarding the care of juveniles. "Mandamus lies to require the discharge by a public officer of a nondiscretionary duty."[6] It "will issue where the undisputed facts show that petitioner has clear legal right to the performance of the act demanded, and a corresponding duty rests upon respondent to perform that duty; and that there is no other adequate remedy open to petitioner."[7] Setting aside the fact that no person or entity requested judicial action, and that Judge Wilmoth acted unilaterally, mandamus does not lie here because DHS has no nondiscretionary duty to keep the Children's Home open. To be sure, DHS has statutory authority regarding the care and custody of juveniles. But in the absence of any abdication of this responsibility, which is not demonstrated by DHS's decision to close the Children's Home,[8] mandamus "is never employed to prescribe in what manner [a governmental agency] shall act."[9] So to the extent the administrative order functions in the place of a writ of mandamus, it is not proper.

More problematically, this recognition of DHS's authority compels the conclusion that Judge Wilmoth exceeded his own. In his response to DHS's petition for prohibition relief, Judge Wilmoth recognizes that the Legislature has charged *DHS* with "establish[ing] and maintain[ing] one or more rehabilitative facilities to be used exclusively for the lawful custody of status offenders,"[10] and he cites statutes touching on DHS's custody of children and juveniles.[11] But Judge Wilmoth contends that his action was authorized by judicial authority regarding juvenile placements. He first quotes a part of Syllabus Point 3 of *State ex rel. West Virginia Department of Health & Human Resources v. Frazier* that provides "[i]t is the court's responsibility to

---

[5] *Id.*

[6] Syl. Pt. 3, *Freeland v. Marshall*, 249 W. Va. 151, 895 S.E.2d 6 (2023) (quoting Syl. Pt. 3, *State ex rel. Greenbrier Cnty. Airport Auth. v. Hanna*, 151 W. Va. 479, 153 S.E.2d 284 (1967)).

[7] *Freeland*, 249 W. Va. at 154, 895 S.E.2d at 10, Syl. Pt. 5 (quoting Syl., *Bd. of Educ. of Fayetteville Dist. v. Lawson*, 113 W. Va. 60, 166 S.E. 696 (1932)).

[8] We note that DHS included within the appendix record an eleven-page list of licensed group residential facilities and child placing agencies.

[9] Syl. Pt. 6, in part, *State ex rel. Affiliated Constr. Trades Found. v. Vieweg*, 205 W. Va. 687, 520 S.E.2d 854 (1999).

[10] W. Va. Code § 49-2-1003(a).

[11] *See id.* §§ 49-4-113 & 49-4-706.

3

determine the placement" of a child adjudicated as delinquent.[12]  But the remainder of the syllabus point makes clear that this placement determination is to be made from *available* placements:

> Once a circuit court adjudicates a child delinquent . . . and finds that the child is so totally unmanageable, ungovernable and antisocial that the child is amenable to no treatment or restraint short of incarceration, then it is the responsibility of the [DHS] to assist the court in making its placement determination by providing the court with full information on placements and services available both in and out of the community.[13]

Nothing in *Frazier* permits a circuit court to create a placement in the first instance or to order placement at a facility that no longer exists.  Instead, we observed in that case that it is DHS's "responsibility, as part of the executive branch of state government, to construct or establish the necessary in-state facilities for juvenile care and treatment."[14]  And Judge Wilmoth's reliance on *State ex rel. Pressley Ridge v. West Virginia Department of Health & Human Resources*[15] and *State ex rel. West Virginia Department of Health & Human Resources v. Bloom*[16] is similarly misplaced.  In *Pressley Ridge*, we reiterated that courts have the authority "to make facility-specific decisions concerning juvenile placements," but we specified that "the executive branch has authority to enter into contracts with providers, the terms of which should not be dictated by the courts."[17]  In *West Virginia Department of Health & Human Resources*, we expressed concern over "the finite housing options the [DHS] apparently has at its disposal to accommodate children in emergency situations,"[18] but nothing in the opinion authorized the creation of additional housing by judicial fiat.

So, instead of legitimizing Judge Wilmoth's conduct, the authority he cites brings into stark relief the distinct responsibilities of two branches of government as to juvenile facilities and services.  While circuit courts enjoy discretion to choose an appropriate placement, it is within DHS's bailiwick to establish the placement options from which courts can choose.  This Court has stated that "[n]o Judge should take unto himself activities or functions which are delegated to other

---

[12] 198 W. Va. 678, 482 S.E.2d 663 (1996).

[13] *Id.*

[14] *Id.* at 689, 482 S.E.2d at 674.

[15] 238 W. Va. 268, 793 S.E.2d 918 (2016).

[16] 247 W. Va. 433, 880 S.E.2d 899 (2022).

[17] 238 W. Va. at 274, 793 S.E.2d at 924 (quoting Syl. Pt. 3, *State ex rel. Ohl v. Egnor*, 201 W. Va. 777, 500 S.E.2d 890 (1997)).

[18] 247 W. Va. at 448, 880 S.E.2d at 914.

branches of the government."[19]  Rather, Article V, Section 1 of the West Virginia Constitution provides that "[t]he legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the Legislature."  This provision "prohibits any one department of our state government from exercising the powers of the others, [it] is not merely a suggestion; it is part of the fundamental law of our State and, as such, it must be strictly construed and closely followed."[20]  Because Judge Wilmoth's administrative order represents a clear encroachment into executive function, it is clearly erroneous and in excess of his legitimate powers; a writ prohibiting its enforcement must issue.[21]

For the foregoing reasons, we grant the writ of prohibition to prevent Judge Wilmoth from enforcing his administrative order mandating the Children's Home to remain open beyond its slated closing date.  The Clerk of Court is directed to issue the mandate forthwith.

Writ Granted.  Mandate to issue forthwith.

**ISSUED:** March 25, 2025

**CONCURRED IN BY:**

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV

---

[19] *In re Goldston*, 246 W. Va. 61, 73, 866 S.E.2d 126, 138 (2021) (quoting *W. Va. Jud. Inquiry Comm'n v. Dostert*, 165 W. Va. 233, 237, 271 S.E.2d 427, 429-30 (1980)).

[20] Syl. Pt. 1, in part, *State ex rel. Barker v. Manchin*, 167 W. Va. 155, 279 S.E.2d 622 (1981).

[21] The patent excess of authority alone demands that a writ of prohibition issue, but we would be remiss in not observing that the other *Hoover* factors have also been met.  The administrative order was entered, first, in various matters, most involving juveniles not housed at the Children's Home, and then in its own matter.  With the progress of the juvenile matters unclear, and the directive that the Children's Home operate for an indefinite period, a direct appeal—whenever a final order is eventually entered—would not be adequate, especially in view of the damage incurred by DHS in the meantime.  DHS would have to staff the Children's Home, rescind canceled service contracts, expend $1.7 million annually, and presumably—given the safety and maintenance issues identified—expend nearly $8 million to make the facility safe for housing juveniles.  For these additional reasons, a writ of prohibition should issue.